*In re* MARRIAGE OF VIVIAN HARRIS, Petitioner-Appellant, and WIL-
LARD S. HARRIS, Respondent-Appellee.

First District (3rd Division)   No. 86—2156

Opinion filed December 28, 1988.

David B. Carlson, David A. Novoselsky, and Kathleen M. Krist, all of Chicago, for appellant.

Davis, Friedman, Zavett, Kane & MacRae, of Chicago (Lori Klingman and James L. Rubens, of counsel), for appellee.

JUSTICE RIZZI delivered the opinion of the court:

Petitioner, Vivian Harris (Vivian), appeals from a judgment relating to the valuation and distribution of property stemming from her marriage to respondent, Willard Harris (Willard). We affirm.

Vivian and Willard were married on January 12, 1958. Three children resulted from the marriage. The children were born, respectively, in 1965, 1967 and 1968. In 1968, the family lived in Elmhurst,

Illinois. Vivian and Willard are both physicians, and both were employed full time during the marriage, except for a brief period when Vivian was not employed because she was caring for the children.

Willard moved his residence to California in December 1974. Vivian and the children were to join Willard in California as soon as Vivian was able to find a job in California. However, Vivian was not able to find suitable employment in California, and she and the children remained living in Elmhurst. In 1977, Willard moved to West Virginia. In 1980, he moved to Florida, where he now resides. Vivian has continued to live with the children in Elmhurst.

Willard did not send any money to Vivian or the children during the time that he did not live in Elmhurst. Vivian supported the family from her salary and marital assets. However, Willard would return to Elmhurst to visit during the time that tax returns were to be prepared and he would prepare his and Vivian's tax returns. Occasionally, Vivian and the children would visit Willard during the time that he was not living in Elmhurst. One of the children lived with Willard in Florida for a year and a half in 1980 and 1981. Another child lived with him in Florida for several months.

Vivian and Willard both consented to the arrangement whereby they lived apart from each other. The record demonstrates that the first period of estrangement between the parties was in 1980. In 1981, they each filed suits for dissolution of marriage. By agreement, a judgment of dissolution was entered in Florida on September 25, 1981, and registered in Illinois. The parties stipulated that all other issues were to be determined in accordance with the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 101 *et seq.*).

On appeal, Vivian contends that the trial court's valuation and distribution of the property was erroneous. She also contends that the trial court abused its discretion in ordering her to pay $115,000 *instanter* to Willard.

When Willard moved to California in 1974, the marital assets totaled approximately $190,000 in cash, securities and equity in the marital home. When he left for California in 1974, Willard took $2,000 from a joint account. From 1975 through 1982, Willard lived on his own income. Vivian used her salary and the marital assets to support herself and the children. However, Willard paid for the family's life and automobile insurances. An agreed order for child support was entered in January 1982.

The trial court evaluated and classified the property as of 1981, which was the year of the dissolution of the marriage. The trial court

found that the total amount of marital property was $358,217.69. Vivian had $321,295.70 in her possession and Willard had $36,921.99 in his possession. The parties stipulated that they each would retain their respective retirement and deferred income benefits, and that Vivian would retain the marital home. The agreed value of the marital home was $146,500 minus a $17,794 mortgage, equalling $128,706.

The trial court ordered that Willard would retain the $36,921,99 of marital funds in his possession; Vivian was ordered to pay Willard $100,000 and retain the balance for herself. Willard retained $92,896.10 in nonmarital funds; and Vivian retained $7,863 in non-marital funds. The $100,000 that Vivian was ordered to pay to Willard represented Willard's portion of the marital property in Vivian's possession. The trial court also determined that "some allowance should be given to Willard for the increase in value [of marital property] from 1981 to 1985." Therefore, the trial court concluded that Vivian should pay Willard an additional $15,500 representing appreciation of the $100,000 for the period from 1981 to 1985.

Vivian first argues that the trial court abused its discretion in ordering her to pay Willard $115,500. She argues that the assets which were left behind by Willard when he went to California in 1974 should be awarded solely to her. She contends that the parties had agreed that Willard was free to live a separate life in California without making support payments to her, and she was to support the family with the money left behind by Willard. Vivian claims that Willard left behind marital assets to relieve himself of his duty to support his family while Vivian supported the family with the assets. Vivian concludes that the trial court erred in failing to recognize this "bargain" and in allowing Willard interest and appreciation rights on the marital property. We disagree.

The property at issue is clearly marital property subject to distribution by the trial court. Under the Illinois Marriage and Dissolution of Marriage Act (Act), property acquired after the marriage is presumed to be marital property. (Ill. Rev. Stat. 1985, ch. 40, par. 503 *et seq.*) This presumption may be overcome by a showing that the property was acquired by a method listed in section 503(a) of the Act. Under section 503(a), parties may agree that certain marital property will be treated as nonmarital property. (Ill. Rev. Stat. 1985, ch. 40, par. 503(a)(4).) However, like other claims under subsection (a), the party asserting the existence of such an agreement has the burden of proving its existence by clear and convincing evidence. See Ill. Ann. Stat., ch. 40, par. 503, Supplement to Historical and Practice Notes, at 48 (Smith-Hurd Supp. 1988).

■ Here, Vivian failed to meet her burden of proof. Her assertion that the parties' conduct and testimony clearly established the existence of an implied agreement is unsupported by the record. In fact, the record belies this claim. Vivian's assertion concerning a purported agreement was not presented to the court until post-trial motions were filed. This shift in theories comes too late and her contention must fail. Vivian's petition for dissolution characterizes the property as marital. Also, Vivian's testimony that she sought employment in California and originally planned to move there is inconsistent with her claim that was made after post-trial motions were filed.

Next Vivian argues that the trial court erred in not considering contributions she made to the marital home. Specifically, she asserts that testimony showed that she contributed more than $70,156 to the marital home in the form of mortgage payments, real estate taxes, repairs, maintenance and improvements for which she did not receive credit.

■ ■ The touchstone of apportionment of marital property is whether the distribution of property is equitable. (*In re Marriage of Stone* (1987), 155 Ill. App. 3d 62, 75, 507 N.E.2d 900, 908.) Section 503(c) of the Illinois Marriage and Dissolution of Marriage Act requires that the trial court divide the marital property in just proportions after considering all relevant factors. (Ill. Rev. Stat. 1985, ch. 40, pars. 503(c), (d)(1) through (d)(7).) Among the relevant factors to be considered by the trial court in its division of property are those enumerated under section 503(c), which include the contribution or dissipation of the parties in the acquisition and preservation of marital property; the duration of the marriage; the relevant economic circumstances of each spouse when the property division becomes effective, including an award of the family home; the age, health, occupation, amounts and sources of income, skills, employability, liabilities, and needs of each party; whether the apportionment is in lieu of or in addition to maintenance; and the reasonable opportunity of each spouse for future acquisition of capital assets and income.

In the instant case, the trial court conducted lengthy hearings. The trial court then summarized the evidence and delineated its findings in a well-reasoned opinion. The trial court was careful to correlate its findings of fact to the evidence and the factors set forth in the Act. The record clearly shows that the trial court considered Vivian's contributions as well as other relevant factors.

■ ■ The trial court has broad discretion under the Act, and its apportionment of property will not be disturbed absent an abuse of that discretion. (*In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256,

261, 507 N.E.2d 71, 75.) The trial court was in the best position to weigh the evidence and judge the credibility of the witnesses. As the trial court observed, both Vivian and Willard submitted statements of assets which were switched from account to account and tracing was difficult, and in some instances virtually impossible, and the parties could not agree on the value of any of the numerous accounts at any given time. The testimony was conflicting and the exhibits contradicted testimonial evidence. There were charges and countercharges of secreting property, improper use of funds and fraudulent transactions.

Having determined that the trial court properly considered all relevant factors before apportioning the property, we find no abuse of discretion. From our review of the record and based on consideration of the factors enumerated in the Act, we find nothing which would require a reversal of what was done by the trial court.

█ Last, Vivian contends that the trial court abused its discretion in ordering her to pay Willard $116,893 from her share of the property upon entry of judgment, and in not granting a flexible payment schedule. She also asks this court to grant her additional time to satisfy her debt. She submits that failure to do so will force her to sell the marital residence and face gross economic loss. She further requests that she be given 7 to 10 years to pay Willard. These contentions have no support in the record.

We have reviewed the division of property and conclude that under the terms of the judgment, Vivian's fears are unfounded. She possesses sufficient assets to satisfy her debt *instanter* without being forced to sell the marital residence. Based upon the record before us, we cannot say that the trial court abused its discretion.

Accordingly, the judgment of the trial court is affirmed.

Affirmed.

McNAMARA and FREEMAN, JJ., concur.